## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **RICHARD D. THOMAS,** | \| |
| Plaintiff, | \| |
| | \|    CIVIL ACTION FILE |
| -vs- | \| |
| | \|    NO.: **1:16-cv-03033-LMM** |
| THEODORE JACKSON, SHERIFF OF | \| |
| FULTON COUNTY, GA, *et al,* | \| |
| Defendants. | \| |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS COLONEL MARK ADGER AND CAPTAIN VICKY WHITE'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)("BRIEF IN OPPOSITION")

Comes now Plaintiff, by and through his undersigned counsel, and pursuant, in part, to Fed.R.Civ.P. 12(b)(6), files his Brief in Opposition to Defendants' Motion to Dismiss for failure to state a claim against them and shows this Court as follows:

## I.   PLAINTIFF'S CLAIMS:

Plaintiff agrees with Defendants' rendition of his claims unless specifically contradicted herein-below.

## II.   PROCEDURAL HISTORY:

Plaintiff agrees with Defendants' rendition of the procedural history of this matter except that:

Defendants have, by their actions and omissions, prevented Plaintiff from even knowing the proper parties to substitute and/or serve to replace John Doe Jail Supervisor and/or John Doe Jailer; and, even in their instant motion, do not identify their status in this case (Supervisor or Jailer, etc).  Thus, this

*Thomas   BRIEF in OPPOSITION 16cv3033    Pg 1 of 22*

Court and Plaintiff have no way of knowing which is which and if they are in fact the alleged John Does.

The Original Defendants served Plaintiff with a list of potential Defendants and parties to substitute for John Doe Supervisor and John Doe Jailer and the undersigned properly served Rule 4 Notice *via* Certified Mail, Return receipt Requested, on the following list of person provided by the Original Defendants: **Talaya Mociers**(returned, unopened); **George Herron**(returned, unopened); **Deputy D. Phillips**; **Mark Adger**; **Vickie White**; and, **Aldranon English**; however, the Original Defendants never stated which of them were the John Doe Supervisor or John Doe Jailer—not even to this day (other than through the instant motions, Plaintiff had no idea who was who and still does not know which of these "new" Defendants were Plaintiff's Jailer or that Jailer's supervisor).

When viewing Plaintiff's pleading in the light most favorable to him, and assuming all allegations contained therein are true, Plaintiff must prevail because he has clearly stated claims against the Jail Supervisor and Jailer upon which relief may be granted against those Defendants (whomever they are).

## STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT

Plaintiff agrees with the Defendants rendition of these facts, however, he adds the following:

Plaintiff was having trouble closing the cell door because

the door was broken and there were no handles on the cell-side of the door such that Plaintiff had to close it by both pulling and pushing the door with great force Dkt.No. [1-4]¶ 9 n.3. Plaintiff also alleges that the door created a hazardous condition known by Defendants and the Jailers. Id. However, Plaintiff alleges that no one fixed the broken door. Id. As Plaintiff was attempting to close the door as instructed, Plaintiff alleges that the unknown Jailer violently slammed the door on Plaintiff's right middle finger and yelled, "I said close it." Id. The door severed about an inch of Plaintiff's finger. Id. ¶ 10.

Plaintiff also alleges that the Jail staff did not adequately listen to the Hospital's instructions Id. ¶ 12, and did not try to preserve the finger tip as instructed, Id.  When Plaintiff complained of the pain while still in the detention center/infirmary, he was told by unknown Jailers that he would have to wait longer because of his complaints. Id. ¶ 30. Because he continued to complain while at the detention center, Plaintiff alleges that the Jailers intentionally kept him in the Jail for an additional five to six hours in retaliation rather than taking him to the Hospital STAT as directed by Grady ER doctors/staff (the "Hospital"). Id. ¶ 13. As a result of this delay and improper "packing procedures", the doctor at the Hospital could not reattach Plaintiff's finger tip. Id. ¶ 14 (see, also, the GA Code Section 9-11-9.1 Affidavit attached to Plaintiff's Verified

Complaint). Instead, the doctors at the Hospital could only do surgery to clean the remaining stub on that finger. Id. ¶ 15.

Plaintiff alleges that, at the time of the incident the trial Court ordered his release *instanter*, Id. ¶ 34, however, because of this incident, he was kept in his cell an extra five to six hours and Defendants Supervisor and Jailer willfully delayed his emergency medical treatment in retaliation for his complaining of severe pain and the delays.

Since the initial surgery, Plaintiff has had subsequent surgeries to alleviate pain, etc., Id. ¶ 16, but, Plaintiff still has severe pain and discomfort. Id. ¶. 17 Additionally, Plaintiff still has limited use of his finger and right hand. Id.

### **STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

A motion to dismiss under *Rule 12(b)(6)* attacks the legal sufficiency of the complaint. It is viewed with disfavor and rarely granted. *See, e.g.,* International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., *400 F.2d 465, 471 (5th Cir. 1968)*("Dismissal of a claim on the basis of bare-bone pleadings is a precarious disposition with a high mortality rate.").

A complaint should not be dismissed for failure to  state a claim unless the plaintiff can prove no set of facts entitling him or her to relief.  Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)*(citing Conley v.

*Gibson*, *355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*;
Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238, 1240
(11th Cir. 1992))*.

This Court is required to presume true all of the
complaint's verified allegations and make all reasonable
inferences in favor of plaintiff.  Duke v. Cleland*, 5 F.3d 1399,
1402 (11th Cir. 1993)*. "The rules require nothing more than 'a
short and plain statement' that will give the defendant fair
notice of the claims and the grounds upon which they are based.
*Conley, 355 U.S. at* 47." Mandell v VSC Communicatons, 1997 USDist
LEXIS 23541 (1997).

Other Circuits have held similarly:  "Motions to dismiss are
viewed with disfavor and are rarely granted." *Test Masters Educ.
Services, Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005)*;
*Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir.
1997)*. In analyzing a motion to dismiss, "[t]he complaint must be
liberally construed in favor of the plaintiff, and all facts
pleaded in the complaint must be taken as true." *Beanal v.
Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999)*. The
Court must also draw all reasonable inferences from those facts
in the plaintiff's favor. *See Lovick v. Ritemoney Ltd., 378 F.3d
433, 437 (5th Cir. 2004)*.

In determining whether to grant a motion to dismiss, this
Court must not go outside the pleadings. *See Kennedy v. Chase*

*Manhattan Bank, 369 F.3d 833, 839 (5th Cir. 2004)*. Dismissal is proper only where, viewing the facts in the light most favorable to the plaintiff, "it appears beyond doubt that [the Plaintiff] can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995)*; see, also, *Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003)*; *Lowrey, 117 F.3d at 247* (stating that "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief").

Here we see that Plaintiff's complaint states several specific claims for relief.

As far as the statute of limitations issue, the Court has allowed Plaintiff additional time to serve the John Doe defendants, however, he was only able to serve a Rule 4 notice on the possible defendants (those names listed above) because Defendants never informed Plaintiff of those names even when he served a Open Records Request on the Sheriff and the Commissioners. See attached Exhibits "A" to "F" and Exhibit "G") and Plaintiff was served with those name about 1 week before the deadline set by this Court. It is clear from these exhibits that there was never any mention of the "new" defendants and/or who the Jail Supervisor or the Jailer who were involved in this incident and the very poor care offered by Corizon, the Jail's

third-party medical provider (which caused 5 inmates' deaths). In fact, Plaintiff still does not know which "new" Defendant is the supervisor and which is the jailer involved in subject incident or if either one is correctly identified as "John Doe." (It should be noted here, Plaintiff does not believe either of these new Defendants - a Major and a Captain - were his Jailer because Jailers usually have ranks of privates or corporals).

### *BRIEF IN OPPOSITION*

#### ARGUMENT AND CITATION OF AUTHORITY

**I.    Plaintiff's Claims Against These Defendants Are Not Barred by the Two-year Statute of Limitations of O.C.G.A. 9-3-33 as Defendants Withholding Identity Information Tolled the Running of the Statute and This Court's Previous Orders Allow Same to Relate Back to the Date of Plaintiff's Original Filing of His Verified Complaint.**

Plaintiff, as allowed by this Court, properly served the persons names given to him by the original Defendants, with, as these Defendants clearly admit, "a summons, copy of the Complaint and waiver of service on each of the ["new"] Defendants on August 31, 2017."  (Defendants Brief, Section "I," first paragraph, pg 7), therefore, by operation of law, these claims relate back to Plaintiff's original filing date.

OCGA § 9-11-10 provides that a complaint may designate a party whose name is not known by any name and when the true name is determined, "the pleading may be amended accordingly." OCGA § 9-11-15 allows for amending pleadings to change parties at any

time before the pretrial order is entered, or thereafter with permission of the court or consent of the adverse party. No pretrial order has been entered in the case. Section 9-11-15( c) further provides that such an amendment will relate back for purposes of the applicable statute of limitations "if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." While that section refers only to "changing parties," it has been held to refer to adding or dropping parties, as well as substituting new parties for those earlier joined. Cobb v. Stephens, 186 Ga.App. 648, 649, 368 S.E.2d 341 (1988).

Where one has filed a complaint naming a "John Doe" defendant, as Plaintiff did here, the requirements of OCGA § 9-11-15( c) must be met before the amendment substituting the named party will relate back to the date of the complaint, if service has not been effected before the expiration of the statute of limitations. Bailey v. Kemper Group, 182 Ga.App. 604, 606, 356 S.E.2d 695 (1987); Larson v. C.W. Matthews Contracting Co., 182 Ga.App. 356, 357(2), 356 S.E.2d 35 (1987); Sims v. American Cas. Co., 131 Ga.App. 461, 481(6), 206 S.E.2d 121

(1974).

Even if this Court rules that these conditions have not been met, the enumerated actions and omissions by Defendants (i.e., withholding critical facts from Plaintiff despite repeated requests; facts which were within their sole custody, possession and control, i.e., the names of the Jail Supervisor and the Jailer who were on duty at the time of Plaintiff's injury, and who made the decisions which caused his injuries, i.e., to slam the door on his finger and to delay taking him to the Hospital for 5 or 6 hours which caused him to lose the tip of his finger and suffer to this day, have tolled the running of the statute of limitations on the Jail Supervisor and the Jailer, whomever they may be (they might be these "new" defendants, but Plaintiff does not know and they have not revealed their role in the incident and which one is which)

For tolling to apply, the fraud "must be such actual fraud as could not have been discovered by the exercise of ordinary diligence." *Bahadori v. Nat'l Union Fire Ins. Co.*, 270 Ga. 203, 507 S.E.2d 467, 470 (1998).

Equitable tolling by concealment is established either through "affirmative actions by the defendant constituting concealment" or "where the wrong is of such a character as to be self-concealing." *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 & n.2 (11th Cir. 1987).

Equity mandates that the statute of limitations be tolled until the fraud is discovered, *Sargent*,[1] provided that the plaintiff injured by the fraud "remains in ignorance of it without any fault or want of diligence or care on his part," *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123, 128 (7th Cir.1972) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875)).

Thus, the concealment by Defendants of the identities of the Jail Supervisor and the Jailer relating to Plaintiff's subject injuries, toll the two-year statute of limitation until the time this Court is convinced that these two "new" defendants are actually the correct parties, i.e., the supervisor and jailer who, jointly and individually, caused Plaintiff's injuries.

Wherefore, this Court must DENY these Defendants' instant motion to dismiss on Georgia's two-year statute of limitation.

## II. Defendants Are Not Entitled to Qualified Immunity From All of Plaintiff's Federal Law Claims in Their Official Capacities

Government officials performing discretionary functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*

---

[1] *Sargent v. Genesco, Inc.*, 492 F.2d 750, 758 (5th Cir.1974). Under federal law the statute of limitations for a fraud action may be equitably tolled. See *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (tolling limitations period in action under Federal Farm Loan Act).

457 U.S. 800, 818, 102 S.Ct. 2727 2738, 73 L.Ed.2d 396 (1982). One of the issues before this Court is whether the Defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable supervisor or a reasonable jailer would have known. In judging the reasonableness of the Defendants' actions, this Court must consider not only the law established at the time of the relevant incident, but also "the information possessed by the official at the time the conduct occurred." _Suissa v. Fulton County_, 74 F.3d 266, 269 (11th Cir.1996) (citation omitted).

**The Clearly Established Law**

At the time of Plaintiff's arrest in 2014, it was clearly established that a jail official violates a pre-trial (and, as here, post-trial) detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee. 6 See, e.g., Thomas v. Town of Davie, 847 F.2d 771, 772 (11th Cir.1988) (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). More specifically, the case law had made it clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate. See _Hill v. Dekalb Regional Youth Detention Center_, 40 F.3d 1176, 1186 (11th Cir.1994) ("[K]nowledge of the need for medical care and

intentional refusal to provide that care constitute deliberate indifference."); _Carswell v. Bay County_, 854 F.2d 454, 457 (11th Cir.1988) ("[W]ith evidence of knowledge [of the prisoner's need for medical care] the jury could have concluded that the failure to provide Carswell with medical care constituted deliberate indifference."); _Ancata v. Prison Health Services, Inc._, 769 F.2d 700, 704 (11th Cir.1985) ("[K]nowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.").

The case law also had clearly established before this case arose that an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay (i.e., a severed finger tip which needs IMMEDIATE MEDICAL CARE) See _Hill_, 40 F.3d at 1187 ("Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."); _Harris v. Coweta County_, 21 F.3d 388, 394 (11th Cir.1994) (sheriff was not entitled to qualified immunity where he intentionally delayed treatment that

sheriff knew had been prescribed for inmate's serious medical need); _Thomas_, 847 F.2d at 773 (failure to provide prompt attention to serious medical needs by delaying medical treatment for nonmedical reasons constitutes deliberate indifference).

Thus, if the individual defendants knew that Plaintiff had a serious medical need, then they should have known from the clearly established law that a total failure to obtain medical treatment for him amounted to deliberate indifference. In addition, if the individual defendants knew that Plaintiff's medical condition was either life-threatening or urgent and would be significantly exacerbated by delaying treatment to reattach his finger tip, then they should have known that their decision to withhold treatment for 5 or 6 hours[2] amounted to deliberate indifference.

Whether each of the defendants had the requisite knowledge of the seriousness of Plaintiff's medical needs is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. See _Farmer v. Brennan_, 511 U.S. 825, 840, 114 S.Ct. 1970 1981, 128 L.Ed.2d 811 (1994) (holding that inmate could prove by circumstantial evidence that prison officials had knowledge of a substantial risk of harm to

_____

[2] Plaintiff claims that the delay was due to retaliation by his Jailers because he complained about his pain and the unwarranted delays in transporting him immediately ("STAT") to the Hospital as advised by the Grady ER doctors and/or staff.

inmate). After reviewing the evidence in the light most favorable to Plaintiff, this Court must agree with him that a reasonable jury could find that each of the Defendants knew that Plaintiff had an urgent medical condition and that a jury could find that each of the defendants planned to keep Plaintiff in jail without medical supervision or treatment in retaliation for his continual complaining about the severe pain and the 5 to 6 hour delay in getting him to the Hospital STAT as instructed by the Grady doctors and staff, even though the Defendants should have known from the clearly established law that such conduct amounted to deliberate indifference.

To summarize, a jury reasonably could find that: (1) each of the individual Defendants knew Plaintiff had urgent medical needs that would be significantly exacerbated by delay, and (2) each of the Defendants delayed obtaining treatment for Plaintiff in retaliation for his continual complaints. Because the law clearly established that such conduct violated a post-trial detainee's Fourteenth Amendment right to due process, the Defendants are not entitled to qualified immunity.

Finally, it is well-settled that a plaintiff must meet an "extremely rigorous" standard in order to plead a Section 1983 claim against a supervisor in his individual capacity. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by _Randall v. Scott_, 610 F.3d 701 (11th Cir. 2010).

Indeed, it is axiomatic that supervisors are not responsible for unconstitutional acts by their subordinates on the basis of respondeat superior liability or vicarious liability. Id. Rather, a supervisor is only liable under Section 1983 in an individual capacity if he or she personally participated in unconstitutional conduct or "when there is a causal connection" between his or her actions and an alleged constitutional deprivation. Id. "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights.'" _Gonzalez v. Reno_, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation and ellipsis omitted).

Plaintiff has argued that Defendant Jail Supervisors are subject to supervisory liability for directing their subordinates (Jailers) to act unlawfully and/or knowing that they would act unlawfully and failing to stop them, as was the case here.

Thus, for these reasons, these "new" Defendants are not entitled to qualified immunity and this Court must DENY their motion to dismiss on these grounds.

**III. Defendants are not entitled to official immunity from Plaintiff's State Claims for False Imprisonment, Intentional Infliction of Emotional Distress, Assault and Battery In Their Individual Capacities.**

The medical care which Defendants were required to administer, or cause to be administered to Plaintiff, is a ministerial duty as already ruled by this Court:

> Under Georgia law "[the provision of] adequate medical attention ... is a ministerial act by the sheriff and has ... deputies ... _Graham v Cobb Cty._, 730 S.E.2d 439, 443-44 (Ga. Ct. App. 2012) (emphasis in original)." [DOC 20, p. 11]

Plaintiff has clearly pleaded that Defendants performed these ministerial duties negligently (in fact, they performed these duties maliciously, in retaliation for Plaintiff's complaints, willfully and wantonly, with that total want of care for the consequences to Plaintiff of their actions and/or omissions).

**False Imprisonment**:

Under Georgia law, false imprisonment (O.C.G.A. § 16-5-41) claims arise when a defendant detains another without legal authority or detains another beyond the scope of defendant's authority.  It is clear by Plaintiff's Verified Complaint that the trial court ordered Plaintiff to be dismissed _instanter_ as his case was resolved as "time served," i.e., no additional Jail-time warranted (i.e., he was a free citizen once again and NOT under any incarceration order and no longer under the Sheriff's dominion.

Under Georgia law "A person commits the offense of false imprisonment when, in violation of the personal liberty of

another, he arrests, confines, or detains such person without legal authority." O.C.G.A. § 16-5-41(a).

Plaintiff's false imprisonment claims are based, in part, on the fact that he was detained against his will by Defendants, who were without authority to keep him incarcerated and/or delay his transportation to the Hospital (they were to release him *instanter* per the trial court's order). This, under Georgia law is a false imprisonment for which Defendants are liable.

**Intentional Infliction of Emotional Distress**:

Under Georgia law, intentional infliction of emotional distress claims arise when a defendant egregious and/or tortious actions omissions ("egregious acts") cause another physical injury and those egregious acts causing those injuries shock the conscience of society. Plaintiff's claims for intentional infliction of emotional distress meet the requirements of Georgia law and satisfy all four elements: (1) the conduct of Defendants was intentional or reckless; (2) the conduct of Defendants was extreme and outrageous; (3) the conduct of Defendants caused Plaintiff emotional distress and (4) the emotional distress suffered by Plaintiff was, and is, severe. *Thimble v. Circuit City Stores*, 220 Ga.App. 498, 499 (469 SE2d 776) (1996).

Plaintiff's intentional infliction of emotional distress claims are based, in part, on the fact that Defendant Jailer, because Plaintiff was taking too long to close his cell door,

violently, with malice, slammed the door on Plaintiff finger, severing the finger tip and then, because Plaintiff complained of the pain and the 5- to 6-hour delay in transporting him to the Hospital for emergency medical care, Defendants, in retaliation, caused additional injuries to Plaintiff, i.e., the loss of that finger tip as the delay and improper handling caused it to rot.

**Assault and Battery**:

Under Georgia law, assault (O.C.G.A. §§ 16-5-20; and 16-5-21) and battery claims (O.C.G.A. §§ 16-5-23.1 and 16-5-24) arise when a defendant precipitates an unwanted touching on another causing them a visible physical injury.  This, under Georgia law Defendants actions arise to Plaintiff's claims of assault and battery (either simple or aggravated) for which Defendants are liable.

Defendant Jailer, because Plaintiff was taking too long to close his cell door, violently, with malice, slammed the door on Plaintiff finger, severing the finger tip.  This, under Georgia law this is assault and battery for which Defendants are liable.

Thus, for these reasons, these "new" Defendants are not entitled to official immunity and this Court must DENY their motion to dismiss on these grounds.

### ADDITIONAL COMMENTS

Defendants knew that the third-party medical providers for the Jail were incompetent, yet, they never ensured the

*Thomas  BRIEF in OPPOSITION 16cv3033    Pg 18 of 22*

Plaintiff's safety when being treated by them.  In fact, Emma
Darnell, a county commissioner, was quoted in a recent AJC
article saying she wanted "to do something other than express
shock and amazement" every time an inmate died in custody at the
Jail. "Historically, we've had problems with {Jail medical}
service." Darnell also said health care at the jail "has never
been adequate since I've been here." (see Exhibit "G").

The law by now is clear that a supervisor may be held liable
for the actions of his subordinates under §1983 if he personally
participates in the act that causes the constitutional violation
or where there is a causal connection between his actions and the
constitutional violation that his subordinates commit. _Braddy v._
_Fla. Dep't of Labor & Emp't Sec._, 133 F.3d 797, 802 (11th Cir.
1998). A causal connection can be established if a supervisor had
the ability to prevent or stop a known constitutional violation
by exercising his supervisory authority and he failed to do so.
_Keating v. City of Miami_, 598 F.3d 753, 765 (11th Cir. 2010); see
also _Cottone v. Jenne_, 326 F.3d 1352, 1360 (11th Cir. 2003)
(supervisor may be liable upon a showing of "a history of
widespread abuse [that] puts the responsible supervisor on notice
of the need to correct the alleged deprivation, and he fails to
do so" (quotation omitted)).

If Defendants knew this, then they are all liable to
Plaintiff for deliberate indifference to his medical needs and

all of the inmates (and detainees like Plaintiff) for their
clearly sub-standard medical treatment and injuries resulting
from same. Plaintiff needs these questions answered STAT.

It is rather curious that Defendants are arguing this
section as if both were supervisors and neither of them are the
Jailer who maliciously and vindictively retaliated against
Plaintiff by slamming the door on his finger and delayed
Plaintiff's transportation to the Hospital with that/those
Jailer's/Jailors' supervisor's consent, permission and/or
ratification.

Whomever the supervisor was, he/she had to authorize the 5-
to 6-hour delay and Plaintiff's eventual transportation to Grady.

Plaintiff demands to know who the real John Doe Defendants[3]
really are so that he can serve them, substitute them for the
John Does, move this case along, and get his day in court.

### *CONCLUSION*

For the within and foregoing reasons, and those contained in
the records and the exhibits attached hereto, Defendants' instant
motion to dismiss should be DENIED in its entirety and that this
Court award Plaintiff such other and further relief deemed fair,
just and equitable by this Court.

This 11th day of December, 2017.

---

[3] The Jail Supervisors and the Jailers who were involved in
subject incident and who caused Plaintiff's severe injuries.

_/s/ Ralph J. Villani_
**Ralph J. Villani, Esq.**
GA Bar No. 727700

*VILLANI LAW FIRM*
821 Dawsonville Hwy.
Suite 250-333
Gainesville, GA 30501-2634

(TEL) 770.985.6773;
(FAX) 770.979.5190
(Email) *ralphjvillani@gmail.com*

**Counsel for Plaintiff**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD D. THOMAS,                |
      Plaintiff,              |
                       |   CIVIL ACTION FILE
 -vs-                             |
                       |   NO.: **1:16-cv-03033-LMM**
THEODORE JACKSON, SHERIFF OF      |
FULTON COUNTY, GA, *et al,*       |
      Defendants.             |

### *COMBINED CERTIFICATION OF COMPLIANCE*
### *AND CERTIFICATE OF SERVICE*

This is to certify that this document complies with the Local Rules; i.e., the font used herein is Courier New 12 point.

This is to certify that I, this day, served opposing counsel for Defendants with a true copy of Plaintiff's within and foregoing **Brief in Opposition,** by and through this Court's CM/ECF *efile* system to:

        **Ashley J. Palmer, Staff Attorney**
        Office of the Fulton County Attorney
        141 Pryor Street, SW, Suite 4038
        Atlanta, Georgia 30303
        *ashley.palmer@fultoncountyga.gov*

This 11th day of December, 2017.

                          **_/s/ Ralph J. Villani_**
**_VILLANI LAW FIRM_**          **Ralph J. Villani, Esq.**
821 Dawsonville Hwy.         GA Bar No. 727700
Suite 250-333
Gainesville, GA 30501-2634
(TEL) 770.985.6773
(FAX) 770.979.5190
(Email) *ralphjvillani@gmail.com*

                          **Counsel for Plaintiff**